653 P.2d 707

**STATE of Arizona, Appellee,**

v.

**William BRYDGES, Appellant.**

**No. 1 CA–CR 5094.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 24, 1982.

Rehearing Denied Oct. 6, 1982.

Review Denied Nov. 9, 1982.

**60**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Bruce M. Preston, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

Although numerous claims of error are made in this appeal, the main issue is whether the trial court properly classified an out of state conviction as dangerous for purposes of enhancing punishment for the Arizona conviction.

This matter originally went to trial on an indictment for aggravated assault, a class 3 felony, with an allegation of a prior conviction of "Altering Obligations of the United States,"[1] and resulted in a jury verdict of guilty on September 18, 1980. The trial

court subsequently granted defendant's motion for a new trial. The propriety of this order is not questioned by either party. Following the granting of a new trial, the prosecution filed a second allegation of prior conviction alleging that the defendant had previously been convicted of Aggravated Battery in the state of Illinois in 1965. The matter again proceeded to trial which again resulted in a verdict of guilty. Following the return of a guilty verdict, the jury also found the defendant guilty of having been previously convicted of the crime of Aggravated Battery in the state of Illinois. The allegation of the prior Illinois conviction did not allege that the crime was dangerous, nor were any facts surrounding the Illinois crime presented to the jury. The evidence in this regard merely consisted of the introduction of an authenticated copy of the Illinois conviction which stated that the defendant has pled guilty to the crime of aggravated battery in Lake County, Illinois and had been sentenced to not less than one nor more than three years imprisonment in the Illinois Penitentiary.

During the hearing on pretrial motions, the prosecutor described the Illinois conviction as involving a "stabbing in a bar" and the presentence report shows that the 1965 Illinois conviction involved a "bar room stabbing."

At the time of sentencing, the defendant was sentenced as a recidivist, dangerous offender, to the presumptive term of 11¼ years, the trial court treating the Illinois conviction as "dangerous." The defendant did not object to the presentence report, nor object before the trial court to the "recidivist, dangerous offender" classification.

The facts surrounding the Arizona crime are not in serious dispute. The victim and the defendant were playing pool at a local Phoenix tavern. During the course of the evening, a slight altercation occurred between the victim and the defendant with an exchange of insults. Subsequently, while the victim was standing with his back to the bar, the defendant rushed at him with

---

1. The defendant pled guilty to having been pre-

viously convicted of this offense.

clenched fists. The victim struck the defendant and simultaneously the defendant stabbed the victim in the back with a knife.

A bystander testified that he saw the defendant with a knife in his hand, and saw the defendant stab the victim under the shoulder blade. In the ensuing struggle, the knife fell to the floor and the defendant stood on it. Blood was evident at this point. The defendant explained the presence of the blood as the "blame fool" must have cut himself on the pool rack, at which point the bystander inquired if that was true, "what are you standing on that knife for, then?" Seeing the inherent logic in this observation, the defendant fled the bar.

Other customers in the bar verified the presence of blood on the victim's shirt during the struggle and that no one else was near enough to the antagonists to cause the stabbing.

Shortly after the occurrence at the bar, police officers traced the vehicle the defendant was driving to a trailer park. After identifying themselves, the defendant admitted the police officers, stating he had been waiting for them and asked them if they were going to give him his rights. The *Miranda* warnings given by the police failed to advise the defendant that anything he might say could be used against him.

The defendant told the police that the victim

> "hit me in the face with a beer bottle, he hit me first and the next thing I knew we were on the floor."

> [Officer Martin] then asked Mr. Brydges "why all the blood?"

> Mr. Brydges stated, "the guy yelled, 'he cut me with a knife,' so I got up and ran. I didn't have any knife. I don't know how he got cut. It wasn't me."

These statements were admitted at defendant's trial.

On appeal, the defendant raises the following issues:

(1) The failure of the jury to find that the Illinois conviction was dangerous precludes the trial court from sentencing him as a "recidivist, dangerous offender."

(2) That the filing of the second allegation of prior conviction for the purpose of enhancing punishment as a dangerous offender following the granting of a mistrial constituted "prosecutorial vindictiveness."

(3) That the trial court erred in admitting his statements because of the failure of the police to provide full *Miranda* warnings;

(4) That the prosecutor was guilty of trial misconduct; and

(5) That the trial court failed to give him credit for 18 additional days of presentence incarceration.

As to the last issue, the state concedes error in not granting the defendant an additional 18 days credit for presentence incarceration. On remand, the sentence imposed must be modified by granting credit for the 18 additional days that the defendant spent in presentence incarceration.

As to the central issue, whether the trial court erred in classifying the defendant's out of state conviction as dangerous for purposes of enhancement, we have been unable to find any evidence in the record from which the jury could determine that the defendant had been convicted of a "dangerous" offense.

The statute [2] under which the trial court enhanced the defendant's sentence as a "recidivist, dangerous offender," provided that the previous conviction must be for a felony which involved the use or exhibition of a dangerous weapon or instrument, the knowing infliction of serious physical injury, or the conviction of any felony committed prior to October 1, 1978, which would carry a penalty up to life imprisonment.

Although the "dangerous" nature of the Illinois conviction was not alleged and the jury which found the defendant guilty of the prior Illinois conviction did not make a finding of "dangerous" as to that offense,

---

2. A.R.S. § 13–604, in effect at times pertinent here; amended by Laws 1980, Ch. 229, § 7, effective April 23, 1980; Laws 1981, Ch. 165, § 1.

the state argues that the trial court can make that finding based upon judicial notice of the Illinois statutes and the extra-judicial statements of the prosecutor and the probation report, plus a "waiver" by the defendant to raise this issue. We disagree.

A.R.S. § 13–604 is unclear as to who makes the determination that a prior offense is dangerous for the purpose of triggering the various enhanced punishments contained in that statute which have their genesis in the "dangerous" characteristic. However, A.R.S. 17, Rules of Criminal Procedure, Rule 19.1(b), provides in pertinent part:

b. Proceeding When Defendant is Charged With Prior Convictions.

In all prosecutions in which a prior conviction is alleged, unless such conviction is an element of the crime charged, the procedure shall be as follows:

\*    \*    \*    \*    \*    \*

(2) If the verdict is guilty, the issue of the prior conviction shall then be *tried,* unless the defendant has admitted the prior conviction. (Emphasis added).

This Rule has been interpreted as requiring a jury determination on the issue of prior conviction, unless the defendant admits the prior conviction. *State v. Gilbert,* 119 Ariz. 384, 581 P.2d 229 (1978).

■ In our opinion, the jury is the proper body to determine not only the fact of prior conviction but also its character, i.e., "dangerousness." We reach this conclusion based upon *State v. Parker,* 128 Ariz. 97, 624 P.2d 294 (1981) which fixed the jury's role in determining the "dangerous" character of substantive crimes listed in A.R.S. § 13–604. In *Parker,* the Arizona Supreme Court held that A.R.S. § 13–604(K) "requires a specific finding by the trier of fact that the dangerous nature of the felony has been proved." *Parker* at 99, 624 P.2d at 296. While the Supreme Court utilized subsection K of A.R.S. § 13–604 to reach the conclusion that the dangerous nature of the crime with which the defendant is charged is entitled to jury consideration, that subsection can equally be interpreted to apply to the jury's role in determining prior con-

viction issues. A.R.S. § 13–604(K) provides in part:

K. The penalties prescribed by this section shall be substituted for the penalties otherwise authorized by law if the previous conviction or the dangerous nature of the felony is charged in the indictment or information and *admitted or found by the trier of fact.* (Emphasis added).

Arguably, since the dangerous nature of a felony is normally not an admitted item by a non-pleading defendant, the phrase "admitted or found by the trier of fact" modifies "previous conviction." This argument becomes more forceful when A.R.S. 17, Rules of Criminal Procedure, Rule 17.6 is considered which specifically authorizes admissions by a defendant of prior convictions. No rule specifically authorizes the admission of the dangerous nature of the felony.

■ In any event, since the defendant is entitled to a jury determination on the issue of whether he has been previously convicted and since the state carries the burden to prove a prior conviction beyond a reasonable doubt for the purpose of enhancement of penalties, *State v. Gilbert, supra,* we hold that if the state desires to establish the dangerous character of a prior conviction in order to trigger the recidivist, dangerous provisions of A.R.S. § 13–604, that character must be alleged in the indictment or information and must be the subject of a jury finding, absent an admission by the defendant pursuant to Rule 17.6.

We therefore hold that the trial court's independent determination after a jury finding which was silent as to the dangerous character of the Illinois conviction, that the Illinois conviction was "dangerous" is of no force and effect.

■ We further hold that for the purpose of enhancing punishment under A.R.S. § 13–604, the dangerous character of the prior conviction is an integral part of the enhancing statute and the failure of the state to prove that enhancing element may

not be waived by failure to object. *State v. Chalmers,* 100 Ariz. 70, 411 P.2d 448 (1966); *see, State v. Ross,* 107 Ariz. 240, 485 P.2d 810 (1971); *State v. Pennye,* 102 Ariz. 207, 427 P.2d 525 (1967).

However, the fact that this court holds that the trial court's determination of dangerous may not be substituted for that of the jury, does not cast doubt upon the jury's finding that a prior conviction had been suffered by the defendant. *State v. Hunter,* 102 Ariz. 472, 433 P.2d 22 (1967). The sentence must be modified to delete the finding that the defendant was "dangerous" and this matter is remanded to the trial court with instructions to resentence the defendant accordingly.

The defendant next contends that the filing of a second allegation of a prior conviction, following the granting of a mistrial, constituted "prosecutorial vindictiveness," and, as such, the finding of "dangerous" should be vacated. As we have already determined that the finding of "dangerous" was improperly made, we need not decide the matter again on this issue.

The defendant's next claim of error was that the trial court erred in admitting the defendant's statements because the police failed to advise the defendant that anything he said could be used against him. The defendant did not request a voluntariness hearing prior to trial on the admissibility of these statements, however, the trial court did hear evidence concerning the voluntary nature of the statements at the time of trial when one of the officers was testifying. *State v. Alvarado,* 121 Ariz. 485, 591 P.2d 973 (1979). The judge ruled that the testimony concerning the fight could be admitted, but the defendant's statements concerning his federal probation would not be admissible. If we were to assume that the failure to give the defendant the complete *Miranda* warnings rendered his statements inadmissible, under the totality of the circumstances presented here we find beyond a reasonable doubt the error to be harmless. Here, the defendant, in his own trailer home, responded to the officers' knock, and invited them inside, saying, "Come on in,

I've been waiting for you, I was just going to call you." After the officers entered, the defendant asked them, "[A]re you going to give me my rights?" The officer did so, from memory, and apparently neglected to inform the defendant that the statements could be used against him, as he did not state that portion of the *Miranda* warnings when reciting them at the voluntariness hearing. The officer then asked the defendant if he understood the rights. The defendant stated that he did. The officer told him that they were there because of a stabbing at the Tack Room Bar, at which point the defendant made the exculpatory statements. Moreover, excluding the defendant's statements would have made no difference to the verdict in this case, as the same statements came in through the testimony of the witnesses who were present at the bar: the victim hit the defendant first, and the defendant denied that he had a knife or had stabbed the victim. In addition, there was no evidence indicating that anyone else could have stabbed the victim other than the defendant.

In addition, these exculpatory statements were used by the defendant's attorney in an attempt to convince the trial judge to give an instruction on self-defense. This coupled with the defense attorney's consistent questioning on cross-examination as to who struck whom first would indicate that the introduction of the statements was nonprejudicial at worst, or at best was beneficial toward proving the attack on the defendant.

The defendant's final claim of error was that the prosecutor was guilty of trial misconduct. This claim is completely unsupported. The statements alluded to by the defendant as demonstrating prosecutorial misconduct do not make impermissible reference to the defendant's failure to testify, *State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1973), or make impermissible personal opinions as to the credence to be given to the witnesses' testimony or facts before the jury, *State v. Hill,* 109 Ariz. 93, 505 P.2d 553 (1973); *State v. Cortez,* 101 Ariz. 214, 418 P.2d 370 (1966). The statements, and the

context in which they were made, clearly focus the attention of the jury on the state of the evidence before the jury. *State v. Lee,* 114 Ariz. 101, 559 P.2d 657 (1976) and were totally non-prejudicial. In any event, there was no objection to any of the comments at trial, thus waiving review of the comments on appeal. *State v. Newman,* 122 Ariz. 433, 595 P.2d 665 (1979).

The judgment of guilt is affirmed. The matter is remanded to the trial court for resentencing in accordance with this opinion.

GRANT, J., and DAVIS, J. pro tempore, concur.

*Note:* The Honorable Richard M. Davis, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.